FILED

2012 May-14  AM 09:57
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| STEPHEN SMITH, | ) | |
| PLAINTIFF, | ) | |
| VS. | ) | **2:10-cv-2765-JHH** |
| CONSTRUCTION DATAFAX, INC., | ) | |
| DEFENDANT. | ) | |

## MEMORANDUM OF DECISION

The court has before it two motions for summary judgment.  The first is the Motion (Doc. # 29) for Partial Summary Judgment filed by Plaintiff Stephen Smith on February 3, 2012.  The second is Defendant Construction Datafax, Inc.'s Cross-Motion (Doc. #38) for Summary Judgment filed on February 27, 2012.  Pursuant to the court's February 8, 2012 order (Doc. # 36), the motions were deemed submitted, without oral argument, on March 26, 2012.  After careful review of the briefs and evidence before the court, Plaintiff's Motion (Doc. #29) is due to be denied and Defendant's Motion (Doc. #38) is due to be denied in part and granted in part for the following reasons.

## I. Procedural History

Plaintiff Stephen Smith commenced this action on October 13, 2010 by filing a complaint in this court alleging interference and retaliation in violation of the Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601 et seq.   Plaintiff's February 3, 2012 Motion for Partial Summary Judgment contends that he is entitled to judgment as a matter of law as to his claim of interference.   (Doc. # 29.) Defendant's February 27, 2012 Cross Motion for Summary Judgment contends that it is entitled to judgment as a matter of law on both of Plaintiff's claims.

Both parties have filed briefs and submitted evidence in support of their respective positions.  Plaintiff submitted a brief (Doc. #30) and evidence[1] (Doc. #31) in support of his Motion for Partial Summary Judgment on February 3, 2012. Defendant submitted a brief (Doc. #39) and evidence[2] (Doc. #40) in support of its own Motion for Summary Judgment and in opposition to Plaintiff's Partial Motion

---

[1] Plaintiff submitted the following evidence in support of partial summary judgment: deposition of Kathy Seiler; deposition of Debbie Farb; deposition of Rachel Smith; documents labeled 0174, 0172, 0428, 0111-0116, 0010, 0008, 0106, 0005, 0064; deposition of Walter Gunn; Defendant's Answers to Request for Admissions, Interrogatories and Requests for Production of Documents dated 5/4/11; Defendant's First Supplemental Answers to Request for Admissions, Interrogatories and Requests for Production of Documents dated 7/12/11; 29 C.F.R. Appendix C.

[2] Defendant submitted the following evidence in support of its Motion and in opposition to Plaintiff's Partial Motion: deposition of Stephen Smith, including exhibits 1-6; deposition of Tommy Chavers; deposition of Darren Sylvia; declaration of Debbie Farb and attachments which were filed under seal.  (See doc. # 42.)

for Summary Judgment on February 27, 2012.  On March 16, 2012, Plaintiff filed a

brief (Doc. #50) and evidence[3] (Doc. #51) in reply, supporting his Motion for Partial

Summary Judgment.  Finally, on March 26, 2012, Defendant filed a brief (Doc. #51)

and evidence[4] (Doc. #52) in reply to Plaintiff's opposition.  All briefs and evidence

have been considered by the court.

## II. Standards for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if

the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material fact

and that the moving party is entitled to judgment as a matter of law."  Celotex Corp.

v. Catrett, 477 U.S. 317, 322 (1986); Chapman v. AI Transp., 229 F.3d 1012, 1023

(11th Cir. 2000).  The party asking for summary judgment always bears the initial

responsibility of informing the court of the basis for its motion and identifying those

portions of the pleadings or filings which it believes demonstrate the absence of a

genuine issue of material fact.  See Celotex Corp., 477 U.S. at 323.  After the moving

party has met its burden, Rule 56(e) requires the nonmoving party to go beyond the

---

[3] Plaintiff submitted the following evidence in reply: Documents labeled 0415-0420, 0063, 0047, 0001; Alabama Department of Industrial Relations - Notice of Claim and Request for Separation Information.

[4] Defendant filed the following evidence in reply: Defendant's Unpaid Absence Policy.

pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.  See id. at 324.

The substantive law will identify which facts are material and which are irrelevant.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant.  See Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  See id. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial.  See Fitzpatrick, 2 F.3d at 1115-17 (citing United States v. Four Parcels of Real Prop., 941 F.2d 1428 (11th Cir. 1991) (en banc)).  If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial.  See Fitzpatrick, 2 F.3d at 1115.  Once the moving party makes

4

such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question.  This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the non-moving party's case.  See Fitzpatrick, 2 F.3d at 1115-16.  If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional

evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts.  See Lewis v. Casey, 518 U.S. 343, 358 (1996) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)).

### III. Relevant Undisputed Facts[5]

#### A.  Construction Datafax, Inc.

Plaintiff Stephen Smith began his employment with Construction Datafax, Inc. on May 2, 2008 and worked in  business development or sales.  (Smith Dep. at 56.) Walter Gunn is the Director of Sales for Construction Datafax.  (Gunn Dep. at 8.) Gunn supervised all the salesmen or business developers, including Smith.  (Id.) Gunn reports directly to Darren Sylvia, the Chief Financial Officers of Construction Datafax.  (Sylvia Dep. at 8.)  Kathy Seiler is the Vice President of Human Resources and Debbie Farb is the Human Resources Director, and reports directly to Seiler. (Seiler Dep. at 7; Farb Dep. at 7-8.)  Farb is responsible for administering leave policies, including the FMLA policy and personal leave policy.  (Id. at 9.)

---

[5]  These are the facts for summary judgment purposes only.  They may not be the actual facts.  See Cox v. Administrator U.S. Steel & Carnegie, 17 F.3d 1386, 1400 (11th Cir. 1994) ("'[W]hat we state as 'facts' in this opinion for purposes of reviewing the rulings on the summary judgment motion [ ] may not be the actual facts'") (citation omitted).  Where the facts are in dispute, they are stated in the manner most favorable to the plaintiff.  See Fitzpatrick, 2 F.3d at 1115.

According to Farb, "[w]hen an employee expresses a need for FMLA [leave, she] then send[s] the paperwork for them to request [leave], indicating when it may need to start, the reasons for the leave, when they think it may need to end." (Farb Dep. at 16-17.) She then sends the employee "the FMLA paperwork or their notice and responsibilities, and the health care provider certification form, whether its for the employee or for a covered family member." (Id. at 17.) After receiving the completed forms from the employee, Farb has "five days to respond to them letting them know whether or not that request has been approved." (Id.) While out on leave, Construction Datafax's policy regarding FMLA leave requires the employee to "contact your supervisor at least every two (2) weeks to update us regarding the status of your health condition or the family member's condition, and your expected return-to-work date." (See Doc. 31-7; Doc. # 49 at 29.) There is no evidence in the record that Smith ever saw the FMLA policy, (Farb Dep. at 14), although it is undisputed that labor law posted, including information about the FMLA, were posted in the break room where Smith worked. (Farb Dep. at 74-75.) Farb testified that she has only supplied FMLA paperwork to employees upon request. (Id. at 17.)

In addition to the FMLA policy, Construction Datafax has a personal leave policy, which provides in pertinent part the following:

> We provide for sick and personal paid time off as a benefit

7

for regular full time employees to use for scheduled and unscheduled events such as . . . immediate family member illness, and other personal appointments.

\*\*\*

Employees who are using personal time should request time off in advance from their immediate supervisor whenever possible . . . .   Employees with unplanned absences  . . . are requited to call in to speak directly to their immediate supervisor as soon as possible, but no later than 15 to 30 minutes after the start of their regular scheduled work shift.  If the supervisor is unavailable, employees may leave a message for their manager, but the employee is responsible for calling back until they reach and speak directly to their manager.  Failure to call in and speak directly to your immediate supervisor for three consecutive days is considered "job abandonment" and thus a voluntary resignation from employment with CDC.

(Doc. # 39 at 17.)

## B.  Smith's Leave from Work and Communication with Construction Datafax

On the morning of Friday, May 28, 2010, Smith's wife was admitted to Brookwood Medical Center for unknown reasons.  (Pl. Exh. 5; Rachel Smith Dep. at 13, 15, 19.)  Smith called Gunn and told him that his wife was in the hospital.  (Smith Dep. at 15-25, 130-31; Gunn Dep. at 20.)  Gunn told him to "do what you need to do" and that if there was anything Gunn could do to let him know.  (Smith Dep. at 131.)  Smith told Gunn that he would call him the following week if he had any more information.  (Id.)

8

On Tuesday, June 1, 2010, Smith's wife's condition worsened and she had to undergo surgery.  (Pl. Exh. 5.)   At 11:13 a.m. that day, Smith sent an e-mail to Gunn that said "So you know, my wife is still in Brookwood and I'll be in and out until that settles down."  (Id. at 145.)  Gunn responded by asking if he could do anything for Smith.  (Id. at 120-21, 145-46.)  Smith does not recall responding to this e-mail, but later in the day, at 4:04 p.m., he sent Gunn a second e-mail with the subject "Personal Time."  (Id. at 146-47; Gunn Dep. at 12-20, 23-25.)  The e-mail stated the following, in full:  "Due to my wife's illness I'll be out the remainder of the week.  We had planned on some vacation time later this month and may consider taking that the following week.  I'll let you know as it will be determined by her health."  (Pl. Exh. 11.)  There is nothing in the record to show that Gunn replied.  It is undisputed that Gunn did not inform Smith of his leave possibilities under the FMLA.  (Gunn Dep. at 26, 29-30.)   Additionally, Farb testified that she did not offer Smith FMLA paperwork

Smith's wife was discharged from the hospital on Sunday, June 6, 2010.  (Pl. Exh. 5; Rachel Smith Dep. at 27.)   After her discharge, she "could barely get up and move for the first few days right after [she] got home."  (Rachel Smith Dep. at 28.)  Smith was responsible for taking care of his wife, as well as all the normal household duties his wife usually attended to, including taking care of their children, cooking

meals, doing laundry, cleaning, and the like.  (Id. at 28, 39.)

Around noon on Monday, June 7, 2010, Smith sent an e-mail to Tommy Chavers, Customer Sales Director,[6] regarding a customer issue.  (Chavers Dep. at 7.) Smith also included a request to Chavers to "let CS, Ruth Ann, etc. know that I'm out of the office for another week (Rachel had to have some pretty extensive surgery). I told Walter [Gunn] but we may not have notified them."  (Exh. 3 to Smith Dep.) Later that day, at 3:42 p.m. Smith sent an e-mail to Customer Service and to Ruth Ann Miller stating "I'll be out of the office until 6-14 or until further notice."  (Pl. Exh. 12.)  About an hour later, at 4:45 p.m., customer service employee Briana Smith forwarded that e-mail to Walter Gunn and Tommy Chavers, among others.  (Id.)

On June 8, 2010, Chavers sent Smith an e-mail asking if there was anything he could do for him while he was out.  (Exh. 4 to Smith Dep.)  Smith replied and told Chavers that he was checking his e-mails and calls and that he set up his e-mail and voicemail with an out of office reply.  (Id.)  This e-mail was Chavers last communication with Smith.  (Chavers Dep. at 13.)

On Monday, June 14, 2010, Smith did not come in to work.  On June 15, 2010, Chavers copied Smith on an e-mail he sent to a customer and immediately received

---

[6] Chavers manages customer service and is a sales trainer.  (Chavers Dep. at 7.)  He reports directly to Gunn.  (Id.)

an "Out of Office AutoReply" from Smith which stated "I will return on Monday, June 14.  Please call 800-759-2716 for assistance."  (Smith Dep. at 166-17; Exh. 6 to Smith Dep.)  It is undisputed that Smith did not return to work the week of June 14 through June 18, 2010.

### C.  Smith's Termination

On Monday June 21, 2010, Smith returned to work and met with Gunn and Debbie Farb, the Human Resource Director.  (Pl. Exh. 13.)  Farb asked Smith to go over the events of the last several weeks and why he had not come to work or communicated regularly with them.   (Id.)  Smith gave the details of his wife's hospitalization and illness to Farb and Gunn.  (Id.; Smith Dep. at 254-55.)  Farb told Smith that based on his communication, they expected him back to work on June 14, 2010, at the latest, but that another week had gone by without any word from him. (Pl. Exh. 13.) According to Farb, Smith told them that "he was probably wrong [ for not communicating with them] and [he] wasn't thinking; . . . it had been stressful over the last couple of weeks."  (Id.)  Farb responded by telling Smith that they needed to review the situation and that there may be disciplinary action as a result.  (Id.)  She instructed him to go home, that they would be in touch, and that they might require documentation to indicate why he was out of work.  (Id.)  After this conversation, Smith packed up his desk and left.  (Id.)  He told Gunn that he wanted to keep his job,

11

but if Construction Datafax terminated his employment, he already had his belongings.  (Id.)

Some time after Smith left, Kathy Seiler, the Vice President of Human Resources, was responsible for reviewing the situation and communicating any decision to Farb. (Seiler Dep. at 8.) Seiler discussed the situation with Darren Sylvia, the Chief Financial Officer, who was under the impression that Smith voluntarily quit when he packed up his belongings and left the office.[7]  (Sylvia Dep. at 11-12, 21-25.) Seiler told Sylvia that Smith had not been at work from June 14 through June 18. (Seiler Dep. at 12.)  They also discussed how Seiler was trying to verify whether Smith made any contact with Gunn through voicemail or e-mail the week of June 14, when he was expected to return to work.  (Id. at 71.)  On June 23, 2010, Seiler told Sylvia that she was unable to substantiate that Smith called in or reported to work during the week of June 14, and the decision was made to terminate Smith's employment that day.  (Seiler Dep. at 9, 18-21, 71.)  On June 24, 2010, Farb called Smith and told him that his employment was being terminated for job abandonment for "no-call/no-show the week of June 14."  (Farb Dep. at 52.)

On June 25, 2010, Smith's wife's doctor gave her a note for her employer

_____

[7] In fact, late in the afternoon after Smith left, Sylvia sent an e-mail stating "Let him go. If he packed his stuff, then left, then he has effectively quit.  Coming back is not an option. Move forward."  (Sylvia Dep. at 12-13.)

stating that she could work half a day starting on June 28 and full days beginning July 6, 2010.  (Pl. Exh. 6.)  Smith's wife returned to work on June 28, 2010.  (Rachel Smith Dep. at 22.)

## IV. Analysis

The FMLA provides an eligible employee with up to twelve (12) weeks of medical leave in a year in the event of "a serious health condition that makes the employee unable to perform the functions of the position of such employee."  29 U.S.C. § 2612(a)(1)(D).  At the end of the leave, the employee has the right "to be restored by the employer to the position of employment held by the employee when the leave commenced" or to an equivalent position.  29 U.S.C. § 2614(a)(1)(A); 29 C.F.R. § 825.214(a).

Leave under the FMLA may be planned or unplanned.  29 U.S.C. § 26112(e); 29 C.F.R. §§ 825.302, 825.303; Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 86 (2002).  Whether planned or unplanned, an employee's right to take FMLA leave is conditioned on the provision of actual or constructive notice to the employer. Stevenson v. Hyre Elec. Co., 505 F.3d 720, 726 (7th Cir. 2007).  Generally, employees are required to provide employers with at least 30 days notice before taking FMLA leave. 29 U.S.C. § 2612(e)(2)(B). When advance notice is not practicable because the need for leave is unforeseeable, the employee should give the

employer notice as soon as practicable.  Cruz v. Publix Super Markets, Inc., 428 F.3d 1379, 1382 (11th Cir. 2005).

The FMLA creates two types of claims: (1) interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act, see 29 U.S .C. § 2615(a)(1), and (2) retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act.  See 29 U.S.C. § 2615(a)(1) & (2); 29 C.F.R. § 825.220(c) ("An employer is prohibited from discriminating against employees . . . who have used FMLA leave."); O'Connor v. PCA Family Health Plan, Inc., 200 F.3d 1349, 1352 (11th Cir. 2000).   To state a claim of interference with a substantive right, an employee need only demonstrate, by a preponderance of the evidence, that he was entitled to the benefit denied.  O'Connor., 200 F.3d at 1353-54. It is not necessary to allege or show that the employer intentionally deprived the employee of benefits, and no showing of ill intent is required.   Strickland v. Water Works & Sewer Bd. of City of Birmingham, 239 F.3d 1199, 1208 (11th Cir.2001); Hoge v. Honda of Am. Mfg., Inc., 384 F.3d 2388 (6th Cir. 2004).  In contrast, to succeed on a retaliation claim, an employee must demonstrate that his employer intentionally discriminated against him in the form of an adverse employment action for having exercised an FMLA right, and a causal connection between the protected conduct and

the adverse employment action must be shown.  Smith v. BellSouth Telecomm., Inc.,
273 F.3d 1303, 1314 (11th Cir. 2001).  Both types of claims are at issue here and the
court discusses them separately below.

### A.  FMLA Interference Claim

As stated above, to state an interference claim under the FMLA, Smith need
only demonstrate that he was entitled to the benefit denied.  See, e.g., Strickland, 239
F.3d at 1206-07.  Specifically, Smith must show the following: (1) that he was an
eligible employee; (2) that Construction Datafax was an eligible employer; (3) that
he was entitled to leave; (4) that Construction Datafax knew or should have known
that his leave was for a FMLA qualifying reason;  and (5) that Construction Datafax
denied him benefits under the FMLA to which he was entitled.  29 U.S.C. §§
2612(a)(1)(D), 2615(a)(1); Drago v. Jenne, 453 F.3d 1301, 1305-06 (11th Cir. 2006);
Cruz v. Publix Super Mkts, Inc., 428 F.3d 1379, 1382-83 (11th Cir. 2005); Wilson
v. NHB Indus., Inc., 219 F.App'x. 851 (11th Cir. 2007).  Plaintiff contends that he
met his burden of proof and Defendant cannot show any question of material fact
necessary to preclude summary judgment, and that it is liable for interfering with
Plaintiff's FMLA rights.

Defendant does not dispute that Smith is an eligible employee, (doc. #39 at 21)
or that it is a covered employer under the FMLA.  (Id.)  Instead, Defendant contends

that "Smith was not denied an FMLA benefit to which he was entitled" under the FMLA and that he did not provide notice of the need for leave the week of June 14. (Id. at 21-27.)  This issue of notice is the major point of contention between the parties.  The court examines the contested elements below.

### 1.  Entitled to Leave?

"Employers covered by FMLA are required to grant leave for eligible employees . . . to care for the employee's spouse, son, daughter or parent with a serious health condition."  29 C.F.R. § 825.112(a)(4).   There is no dispute in the evidence that Smith was entitled to leave under the FMLA.   As stated above, Defendant does not dispute that it is covered under the FMLA and that Smith is an eligible employee.  (Doc. # 39 at 21.)  It is also undisputed that Rachel Smith is Plaintiff's wife and that he needed time off from work to take care of her.  Therefore, the court must consider whether Rachel Smith suffered from a "serious health condition."

There is no evidence in the record to dispute that Rachel Smith suffered from a serious health condition.  The FMLA defines a "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves - (A) inpatient care in a hospital, hospice, or residential care facility; or (B) continuing treatment by a health care provider."  29 U.S.C. § 2611(11).  The Department of

Labor provides further explanation on the definition of a serious health condition, stating: "[i]npatient care means an overnight stay in a hospital, hospice, or residential care facility, including any period of incapacity . . ., or any subsequent treatment in connection with such inpatient care."  29 C.F.R. § 825.114.  "The term 'incapacity' means inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefore or recovery therefrom."  29 C.F.R. § 825.113(b).

The evidence in the record regarding Rachel Smith's condition clearly falls under the definition of a "serious health condition."  She was admitted to the hospital on May 28, 2010, and a few days later underwent laproscopic cholecystectomy[8] surgery and suffered from am ovarian cyst.  (Pl. Exh. 4 & 5; Rachel Smith Dep. at 13, 15, 19.)  She was discharged from the hospital five days after surgery.  (Pl. Exh. 5; Rachel Smith Dep. at 27.)  After she returned home, the evidence shows that she was incapacitated, as that term is defined in 29 C.F.R. § 825.113(b), and Plaintiff cared for his wife during this period.  (Rachel Smith Dep. at 28, 39-40.)  As such, the court concludes that Plaintiff was entitled to leave under the FMLA during his wife's hospitalization and period of incapacity.

---

[8] Laparoscopic cholecystectomy is a procedure in which the gallbladder is removed by laparoscopic techniques

### 2. Adequate Notice?

The question of adequate notice is at the heart of this case and the summary judgment motions before the court.  It is undisputed that Smith's need for leave was unforeseeable.  Under the "unforeseeable leave" line of cases, when  "an employee's need for FMLA leave is unforeseeable, the employee need only provide [his] employer with notice sufficient to make the employer aware that [his] absence is due to a potentially FMLA-qualifying reason." Gay v. Gilman Paper Co., 125 F.3d 1432, 1436 (11th Cir.1997).  Verbal notice can be sufficient, 29 C.F.R. §§ 825.302(c), 825.303(b), and no "magic words" are needed.  29 C.F.R. § 825.301(b); Cruz, 428 F.3d at 1383-84; Woods v. DaimlerChrysler Corp., 409 F.3d 984 (8th Cir. 2005); Calvin v. Honda of America Mfg., Inc., 346 F.3d 713 (6th Cir. 2003).  The employee does not need to expressly assert rights under the FMLA, or even mention the FMLA, so long as the employee conveys enough information to put the employer on notice that an event described in the FMLA may have occurred.  See Cruz, 428 F.3d at 1383-84 (citations omitted).  There are no categorical rules governing the content of notices - i.e. what is sufficient to put an employer on notice and what is not - instead courts recognize that "[w]hat is practicable, both in terms of the timing of the notice and its content, will depend upon the facts and circumstances of each individual case." Cavin v. Honda of Am. Manufacturing, Inc., 346 F.3d 713, 724 (6th Cir. 2003)

(quoting <u>Manuel v. Westlake Ploymers Corp.</u>, 66 F.3d 758, 764 (5th Cir. 1995)).

"[W]hen the employer acquires knowledge that an employee's leave may be for an FMLA-qualifying reason, the employer must notify the employee of the employee's eligibility to take FMLA leave within five business days, absent extenuating circumstances." 29 C.F.R. § 825.300(b) (1). The FMLA requires an employer to give an employee whose leave may be covered by FMLA "written notice detailing the specific expectations and obligations of the employee and explaining any consequences of a failure to meet these obligations." 29 C.F.R. § 825.300(c)(1).

Plaintiff contends that for his unforeseeable leave, the notice he gave to Gunn on Friday, May 28, 2010 and again on June 1, 2010, was sufficient to put Defendant on notice that his leave may have been for an FMLA-qualifying reason. (Doc. #30 at 16-20; Doc. # 49 at 11-14.) Plaintiff argues that the burden was then on Defendant to (1) obtain additional information to determine if the leave qualified under the FMLA, 29 C.F.R. § 825.300(b)(1), and (2) provide written notice to Smith detailing Defendant's expectations, Smith's obligations, and any consequences for failure to meet those obligations. 29 C.F.R. § 825.300(c)(1). (Doc. #30 at 20-22 Doc. #49 at 15-18.)   Defendant, on the other hand, argues that the real issue is not the notice given in late May and early June – Defendant gave Smith leave for those two weeks he asked for time off. (Doc. # 39 at 26; Doc. #51 at 7.)  Instead, according to

19

Defendant, the reason for his termination was that Smith did not give Defendant any notice whatsoever regarding Plaintiff's need for leave the week of June 14. (Doc. # 51 at 6-7.)

Adequacy of notice is consistently regarded as a finding of mixed fact and law. "The question of whether notice was given, and if so, what the notice consisted of and when it was given, is one of fact." Cavin, 346 F.3d at 724. Here, the parties' dispute centers on an issue of fact - whether the notice given by Smith in late May and early June was sufficient to put Defendant on notice that his continued absence the week of June 14 was related to that initial notice, even though he had communicated that he would return to work on June 14.[9] Because this material issue of fact remains on the notice element of the interference claim, summary judgment is due to be denied on Plaintiff's claim of interference under the FMLA.

**B. FMLA Retaliation Claim**

To prove FMLA retaliation, Smith must show that Construction Datafax intentionally discriminated against him for exercising an FMLA right. See 29 U.S.C. § 2615(a)(2); 29 C.F.R. § 825.220(c) (an employer is prohibited from discriminating

---

[9] The court is aware of the wrinkle in this communication: the email to Customer Service and Ruth Ann Miller that stated: "I'll be out of the office until June 14 or until further notice" that was forwarded to Gunn and Chavers. This wrinkle does not change the court's opinion that a question of fact exists on the notice element.

against employees who attempt to use FMLA leave). Unlike an interference claim, an employee "bringing a retaliation claim faces the increased burden of showing that his employer's actions were motivated by an impermissible retaliatory or discriminatory animus." Strickland, 239 F.3d at 1207 (internal quotation marks omitted).

When evaluating a claim of retaliation under the FMLA, in the absence of direct evidence of discrimination on the part of the employer, the court applies the burden-shifting framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817 (1973), for evaluating Title VII retaliatory discharge claims. See Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1275, 1283 (11th Cir. 1999) (affirming based on the holding and rationale of the district court's order, which in turn applied the McDonnell-Douglas framework); see also Chaffin v. John H. Carter Co., Inc., 179 F.3d 316, 319 (5th Cir.1999). Under the McDonnell Douglas and Burdine framework, the plaintiff first has the burden of establishing a prima facie case of retaliation, which creates a rebuttable presumption that the employer acted illegally. See id. at 1527-28. The methods of presenting a prima facie case, as well as the exact elements of the case, are not fixed; rather they are flexible and depend to a large degree upon the facts of the particular situation. See, e.g., Nix v. WLCY Radio/Rahall Commc'ns, 738 F.2d 1181, 1185 (11th Cir.

21

1984); <u>Lincoln v. Bd. of Regents of Univ. Sys.</u>, 697 F.2d 928, 937 (11th Cir. 1983).

After the plaintiff has shown a prima facie case and, thereby, has raised the presumption of retaliation, the burden of production shifts to the employer to articulate a legitimate, nonretaliatory reason for its actions.[10]  <u>See</u> <u>Rojas</u>, 285 F.3d at 1342; <u>Combs</u>, 106 F.3d at 1528.  The employer "need not persuade the court that it was actually motivated by the proffered reasons."  <u>Burdine</u>, 450 U.S. at 254-55; <u>see</u> <u>Chapman</u>, 229 F.3d at 1024.  If the employer satisfies that burden by articulating one or more such reasons, then the presumption of retaliation falls and the burden of production again shifts to the plaintiff to offer evidence sufficient for a reasonable jury to conclude that the employer's supposedly legitimate reason is merely a pretext for illegal retaliation. Although the prima facie case is irrelevant once the employer has offered a legitimate reason for its actions, the evidence of pretext may include the same evidence offered to establish the prima facie case.  <u>See</u> <u>Combs</u>, 106 F.3d at 1528.

Despite this shifting of the burden of production between the plaintiff and the defendant under the <u>McDonnell Douglas</u> and <u>Burdine</u> framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated

---

[10] <u>See</u> <u>Chapman</u>, 229 F.3d at 1032 (A subjective reason is a legally sufficient, legitimate, nondiscriminatory reason if the defendant articulates a clear and reasonably specific factual basis upon which the employer based its subjective opinion.).

22

[or retaliated] against the plaintiff remains at all times with the plaintiff."  Burdine,

450 U.S. at 253.  Given that the ultimate burden of persuasion always lies with the

employee, a plaintiff may prevail on an employment retaliation claim and may also

defeat a summary judgement either by proving that intentional retaliation did indeed

motivate the defendant or by producing sufficient evidence to allow a rational trier

of fact to disbelieve the employer's proffered legitimate reasons, thus permitting but

not compelling the trier of fact to make a finding of illegal retaliation.  See Reeves

v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147-48 (2000); St. Mary's Honor

Ctr. v. Hicks, 509 U.S. 502 (1993); Abel v. Dubberly, 210 F.3d 1334, 1339 (11th Cir.

2000); Alexander v. Fulton County, 207 F.3d 1303, 1336 (11th Cir. 2000); Combs,

106 F.3d at 1529-38 (interpreting Hicks and the post-Hicks case law); Hairston v.

Gainesville Sun Publ'g Co., 9 F.3d 913, 920-21 (11th Cir. 1993).

### 1.  Prima Facie Case of Retaliation

To establish a prima facie case of retaliatory discharge or retaliation, a plaintiff

must show that (1) he engaged in statutorily protected conduct; (2) he suffered an

adverse employment action; and (3) there is a causal connection between the

protected conduct and the adverse employment action.  See Martin v. Brevard County

Pub. Sch., 543 F.3d 1261, 1268 (11th Cir. 2008); Parris v. Miami Herald Pub'g Co.,

216 F.3d 1298, 1301 (11th Cir. 2000); Gupta v. Florida Bd. of Regents, 212 F.3d 571,

587 (11th Cir. 2000) (Title VII).  It is undisputed that Plaintiff suffered an adverse employment action when he was terminated.  Defendant contends that Smith did not engage in statutorily protected activity because "he never sought FMLA leave not did he opposed any allegedly unlawful practice under [the] FMLA until after the termination of his employment."  (Doc. #39 at 29.)  Defendant also contends that Plaintiff cannot establish a causal connection between his termination and any alleged protected activity.  (Id. at 29-30.)

For purposes of summary judgment only, the court assumes that Smith established a prima facie case of retaliation under the FMLA.  As for the first element, the court has concluded that there is a genuine issue of material fact as to notice.  It follows, therefore, that there is a genuine issue of material fact as to whether Smith engaged in statutorily protected conduct.  However, for the purposes of summary judgment, the court will assume, without deciding, that Smith can meet this element and will move on to the next element of the prima facie case.[11]

As for causal connection, "[t]he general rule that close temporal proximity between the employee's protected conduct and the adverse employment action is sufficient circumstantial evidence to create a genuine issue of material fact of causal

---

[11] The court does so because even if Smith did engage in statutorily protected conduct, he cannot establish pretext as a matter of law.  See infra.

connection."[12]  Brungart v. Bellsouth Telecomms., Inc., 231 F.3d 791, 799 (11th Cir. 2001).  Plaintiff engaged in protected conduct during his leave from June 1, 2010 until his return to work on June 21, 2010.  He was sent home from work the day that he returned and was terminated three days later on June 24, 2010.  Under the Eleventh Circuit case law, three days is clearly sufficient temporal proximity to establish causal connection for the prima facie case.  See Farley v. Nationwide Mut. Ins. Co., 197 F.3d 1322, 1337 (11th Cir. 1999) (seven-week gap is sufficiently close to establish a causal connection).  As such, for purposes of summary judgment only, the court will assume that Plaintiff has established a prima facie case of retaliation under the FMLA.

## 2.  Nonretaliatory Reasons for Termination and Pretext

Although Smith successfully established a prima facie case of retaliation, to prevail on a motion for summary judgment, he must show that the articulated reason for his termination was a pretext for retaliation.  See Holifield, 115 F.3d at 1564-65. Defendant states that Smith was terminated for job abandonment as he "did not show up for work for over a week and did not contact his supervisor for approval for the time off."  (Doc. #39 at 32-33.)  Further, Defendant contends its company policy

---

[12] There is no evidence here that the decisionmaker did not have knowledge that Plaintiff engaged in the protected conduct.  Specifically, Sylvia, the CFO and ultimate decisionmaker, testified that she "was aware that he wasn't at work because of health related issues, but not specific as to his wife."  (Sylvia Dep. at 24.)

clearly states that failure to call in and speak to the supervisor directly for three consecutive days constitutes job abandonment. (Id. at 33.)  Job abandonment is a legitimate, nonretaliatory reason to terminate an employee. Therefore, Defendant has met its burden of articulation, the presumption of retaliation is destroyed, and the burden shifts back to Plaintiff to show by a preponderance of the evidence that retaliation motivated the decision to terminate his employment.  See Sierminski v. Transouth Fin. Corp., 216 F.3d 945, 950 (11th Cir. 2000).

Pretext is established when a plaintiff "present[s] concrete evidence in the form of specific facts" showing that the defendant's proffered reason was pretextual. Bryant v. Jones, 575 F.3d 1281, 1308 (11th Cir. 2009).  "[The plaintiff] may succeed in this either directly by persuading the court that a discriminatory [or retaliatory] reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."  Jackson v. State of Ala. State Tenure Comm'n, 405 F.3d 1276, 1289 (11th Cir.2005) (quotation marks omitted); see also Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763, 771 (11th Cir.2005) (A plaintiff's evidence of pretext "must reveal such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence.").  A plaintiff does not demonstrate pretext by showing

26

that the defendant had a mistaken belief about the facts that formed the basis for the alleged non-retaliatory reason.  Woodard v. Fanboy, L.L.C., 298 F.3d 1261, 1265 (11th Cir. 2002).  Instead, the plaintiff must present evidence that the defendant did not honestly believe the facts on which it based its non-retaliatory reason.  Id. Further, when the employer provides a reason "that might motivate a reasonable employer, an employee must meet that reason head on and rebut it . . . ." Chapman, 229 F.3d at 1030.   Conclusory allegations and assertions of retaliation are insufficient.  See Bryant, 575 F.3d at 1308.

Smith makes two pretext arguments.  First, Smith contends that "[t]he problem with Defendant's legitimate non-retaliatory reason is that it failed to apply its own policy to the facts it allegedly investigated."  (Doc. # 49 at 28.)  Smith contends that the "deviation from its own policy shows Defendant's actions represent a question of fact as to whether its termination was in fact retaliatory or a legitimate business decision."  (Id. at 30.)  Second, Smith argues that Defendant does not maintain a consistent reason for his termination and that inconsistency serves as evidence of pretext.  (Id. at 30-32.)

Smith's first argument fails for the same reason why a question of fact remains on the interference claim.  Smith argues that  had Defendant applied its FMLA policy to his leave, as opposed to the personal leave policy, he would have been in

27

compliance with the FMLA policy. (Id. at 28-3.)  Although an employer's deviation

from its own standard procedures may serve as evidence of pretext, Bass v. Bd. of

County Comm'rs, Orange County, Fla., 256 F.3d 1095, 1108 (11th Cir. 2001), it is

undisputed that Defendant did not apply its FMLA policy to Smith's leave from work.

That fact directly supports Smith's claim of interference under the FMLA –

Defendant applied its personal leave policy, instead of allowing leave under the

FMLA, and fired him for the three-day absence.  It is irrelevant that if Defendant had

applied its FMLA policy, Smith would not have been in violation of it.  That did not

happen, and the evidence shows that Defendant did not consider his leave as

qualifying under the FMLA.  (See Doc. #49 at 14-21.) Instead, Defendant followed

its personal leave policy and terminated Smith for job abandonment under the policy.

Therefore, Smith's first pretext argument fails.

   Smith's second pretext argument is not supported by the record.  While it is

true that "an employer's failure to articulate clearly and consistently the reason for an

employee's discharge may serve as evidence of pretext," Hurlbert v. St. Mary's

Health Care Sys. Inc., 439 F.3d 1286, 1298 (11th Cir. 2006), the record shows that

Defendant has remained consistent in its articulation of the reason for Plaintiff's

termination.  Plaintiff highlights two pieces of evidence in support of his argument,

but neither rise to the level required to truly be inconsistent.  Plaintiff first points to

28

the email sent by Darren Sylvia on June 21, 2010, after Smith packed his office and left, which states: "If he packed his stuff and left, then he effectively quit.  Coming back is not an option.  Move forward." (Pl. Exh. 18.)  This email, however, does not reflect what actually transpired after Smith left, but instead reflects Sylvia's initial impression that he quit.  (Sylvia Dep. at 11-12, 21-25.)  The record reflects an investigation by Seiler, the Vice President of Human Resources, into the situation, which included Sylvia as well as others, and ended two days later with Seiler's inability to substantiate  that Smith called in or reported to work during the week of June 14; at that point the decision was made to terminate Smith's employment. (Seiler Dep. at 8-9, 18-21, 71.)

The second piece of evidence Plaintiff uses in his attempt to prove an inconsistency are three documents all created after Smith's termination.  The first two were created and/or signed on Walter Gunn on July 1, 2010.  One states that "employee resigned" (Pl. Exh. 19; Farb Dep. at 70), while the other states "Steve didn't call of show up for a week." (Pl. Exh. 20; Farb Dep. at 69.)  The third document is Farb's response to the Alabama Department of Industrial Relations, where she stated the reason give for termination was "No call to supervisor and did not report to work June 14-18, 2010.  Job abandonment termination effective 6/24/2010 - date notified of termination." (Pl. Exh. 21; Farb Dep. at 71.)  The second

two documents state the exact same reason and are in no way contradictory.  The first document, - stating that "employee resigned" - may at first glance seem to be inconsistent, but after a closer look does not rise to the level of inconsistency recognized in the Eleventh Circuit.  The reason for this conclusion is that in describing Smith's actions as a "resignation" as opposed to "job abandonment," Defendants are not changing their story.  It is not as if they now claim that Smith's termination was for disciplinary problems or insubordination.  It is really just semantics - the story has been from the beginning that Smith did not call in the week of July 14 and they considered these actions to mean that he abandoned or effectively resigned from his job.  Moreover, the personal leave policy states that "failure to call in and speak directly to your immediate supervisor for three consecutive days is considered 'job abandonment' and thus a voluntary resignation from employment."  This policy language expressly equates job abandonment with voluntary resignation, thus highlighting the consistency of the reason stated for Smith's termination.

    In conclusion, Smith has failed to show that Defendant intentionally retaliated against him for having exercised an FMLA right, see Smith, 273 F.3d at 1314, and his claim of retaliation fails.  Therefore, Defendant is entitled to summary judgment on Plaintiff's claim of retaliation under the FMLA.

## VI.  Conclusion

In summary, the court finds that a material issue of fact remain on the interference claim.   Therefore, neither Plaintiff Stephen Smith nor Defendant Construction Datafax, Inc. is entitled to judgment as a matter of law on the claim of interference under the FMLA.  The court further finds that no material issues of fact remain on the retaliation claim.  Therefore, Defendant Construction Datafax, Inc. is entitled to judgment as a matter of law on Plaintiff's claims of retaliation under the FMLA.

A separate order will be entered.

**DONE** this the   14th   day of May, 2012.

_____
SENIOR UNITED STATES DISTRICT JUDGE